# In the United States Court of Federal Claims

No. 11-90
Filed: August 10, 2011
**TO BE PUBLISHED**

| | |
|---|---|
| ************************************** <br> \* <br> \* <br> NATHAN T. MEIDL,   \* <br> \* <br> Plaintiff,   \* <br> \* <br> v.   \* <br> \* <br> THE UNITED STATES,   \* <br> \* <br> Defendant.   \* <br> \* <br> \* <br> \* <br> ************************************** | Army Regulation 635-40; <br> Retirement or Separation for Physical <br>     Disability, 10 U.S.C. § 1201; <br> Tucker Act Jurisdiction, 28 U.S.C. § 1491; <br> Waiver. |

**Jason Ellis Perry**, Law Office of Jason Perry, Esquire, Cheshire, Connecticut, Counsel for Plaintiff.

**Sheryl Lynn Floyd**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge.*

**I. RELEVANT FACTS.**[1]

On September 8, 1993, Nathan T. Meidl ("Plaintiff") enlisted in the Army Reserve Officers' Training Corps ("Army ROTC") program while attending the University of Wisconsin. AR 209. On April 9, 1996, Plaintiff entered active duty in the United States Army. AR 10, 194-204. On April 30, 2000, he was appointed as a commissioned officer in the Active Guard Reserve ("AGR") program. AR 167.

Later in 2000, while serving in the AGR, Plaintiff began to experience bilateral foot pain that was aggravated by prolonged standing and running. AR 10. In 2001, he was diagnosed with

---

[1] The relevant facts were derived from the May 6, 2011 Administrative Record ("AR 1-211").

*pes planus*.[2]  *Id.*  In early 2002, Plaintiff began to experience pain in his left wrist that was aggravated by daily activities, as a result of degenerative changes to his left wrist joint.  AR 3, 10.

On October 5, 2005 Plaintiff entered into active duty in Iraq as an Acquisitions Corps Officer.  AR 10, 95.  In April 2006, while lifting weights, he tore his left pectoralis major and injured his shoulder, requiring surgery.  *Id.* Due to these injuries, Plaintiff had a limited range of motion and difficulty bearing more than five pounds of weight.  *Id.*  On April 26, 2006, he was diagnosed with hypertension.  AR 11.  As a result of his injuries and surgical treatment, Plaintiff reverted to AGR status.  AR 10.

From October 10, 2008 to October 21, 2008, Plaintiff was again deployed to Iraq for a temporary tour of duty.  AR 10.  After his return, in April 2009, his *pes planus* was "graded as severe, bilaterally with pronation, intolerance to weight bearing, extended standing, and extended walking."  AR 10-11.  In June 2009, Plaintiff began to develop bilateral *plantar fasciitis*[3] that was painful when he wore military foot wear.  AR 11.  In 2009, Plaintiff's left Achilles tendon ruptured from playing basketball, requiring orthopedic surgery and resulting in residual heel pain. AR 11.  Thereafter, Plaintiff's military physicians directed that he be evaluated for physical disability by a Medical Evaluation Board ("MEB").[4]

On November 12, 2009, Plaintiff was examined at an orthopedic clinic in preparation for evaluation by a MEB.[5]  AR 1-3.  The clinic examined Plaintiff's left shoulder, his left ankle, a surgical scar, and his left wrist.  AR 2.  The clinic concluded that Plaintiff's left shoulder and wrist pain did not meet Army retention standards because they interfered with his ability to perform military duties.  AR 2-3.  The clinic concluded that Plaintiff's left ankle pain, however, met retention standards.  AR 2.  The orthopedic clinic did not examine Plaintiff's *pes planus* or *plantar fasciitis*.  AR 28.

On February 26, 2010, Plaintiff's commander, recommended that the Army not retain Plaintiff due to his left shoulder injury, left wrist pain, bilateral *pes planus*, and bilateral *plantar fasciitis*, because Plaintiff could not perform his Military Occupational Specialty ("MOS") as an acquisition or logistics officer.  AR 8.

---

[2] *Pes planus* is the medical term for flatfeet.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1441 (31st ed. 2007) ("DORLAND'S").

[3] *Plantar fasciitis* refers to inflammation of the sole of the foot.  DORLAND'S at 692, 1476.

[4] The AR does not contain a document reflecting the date of this referral.

[5] The Army may convene a medical evaluation of a Soldier "when a question arises as to the Soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability."  Army Reg. 635-40 ¶¶ 4-6, 4-7, 4-8.  A MEB is convened to "document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status."  Army Reg. 635-40 ¶ 4-10.  If the MEB finds that a Soldier is not medically qualified for retention, it will recommend referral to a Physical Evaluation Board.  *Id.*

On February 28, 2010, a MEB considered Plaintiff's medical condition and concluded that his left shoulder, left wrist, *pes planus*, and *plantar fasciitis* did not meet the Army's retention standards. AR 10-13. The MEB found, however, that Plaintiff's left Achilles tendon rupture and hypertension met retention standards. AR 13. As a result, the MEB recommended referral to a Physical Evaluation Board ("PEB")[6] for further evaluation. AR 13.

On March 9, 2010, before the PEB convened, Plaintiff was given an opportunity to have the MEB's findings reviewed by an impartial medical professional. AR 14. In addition, Plaintiff was afforded the opportunity to review the MEB's findings to decide whether he concurred, and if not, to submit a statement explaining any disagreement. *Id.* Plaintiff declined the opportunity for an impartial medical evaluation and did not dispute the findings and recommendation of the MEB. AR 15-17.

On March 25, 2010, the PEB considered Plaintiff's medical records, determined that Plaintiff's chronic shoulder pain and wrist pain conditions rendered him unfit for service, and rated each at a ten percent disability for a total of twenty percent disability.[7] AR 19-20. The PEB, however, determined that the bilateral *pes planus*, bilateral *plantar fasciitis*, left Achilles tendon, and hypertension were not unfitting conditions, and thus were not rated. AR 19. Therefore, the PEB recommended discharge with severance pay at a twenty percent disability rate. AR 20.

On March 31, 2010, after the PEB issued a determination, the orthopedic clinic issued an Addendum indicating that although it had not examined Plaintiff's bilateral *pes planus* and *plantar fasciitis*, an examination by a podiatrist on April 13, 2009, these conditions did not meet retention standards. *Id.*

On April 7, 2010, Plaintiff acknowledged that he was informed of his rights by the PEB Liaison Officer ("PEBLO"). AR 21-27. Plaintiff was given three options: (1) accept the preliminary findings of the PEB and waive his right to a formal hearing; (2) contest the preliminary findings and waive his right to a formal hearing; and (3) contest the preliminary findings and demand a formal hearing. *Id.* Plaintiff decided to concur with the result of the PEB and waive a formal hearing of his case. *Id.*

On July 13, 2010, Plaintiff was discharged from active duty in the Army due to his

---

[6] PEBs have authority to evaluate a Soldier's physical disability based on the following three factors: 1) whether the Soldier is physically fit or unfit to perform the duties of the Soldier's office, grade, rank, or rating; 2) whether the disability is of a permanent nature; and 3) whether the disability meets the criteria established by law for compensation. *See* Army Reg. 635-40 ¶¶ 4-19(a)(1)-(3). If the PEB determines that a Soldier is unfit because of a physical disability and is entitled to benefits, the PEB determines a percentage rating for each disability rendering the Soldier unfit for duty. Army Reg. 635-40 ¶ 4-19(i).

[7] The Veterans Affairs Schedule for Rating Disabilities is used in deriving percentage ratings. Army Reg. 635-40 ¶ 4-19.

disability.  AR 30.  Plaintiff was separated from the Army with disability severance pay, but did not receive medical retirement because his disability rating was less than thirty percent and he had less than twenty years of service.  AR 19.

## II.   PROCEDURAL HISTORY.

On February 10, 2011, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims alleging that he was denied disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.  Compl. ¶ 22.  The February 10, 2011 Complaint also alleges that the PEB failed to rate his disabilities at an eighty percent level, to provide an adequate MEB evaluation, and to apply applicable evidentiary standards.  Compl. ¶ 22.  On May 6, 2011, the Government filed the Administrative Record ("AR 1-211") and a Motion For Judgment On The Administrative Record ("Gov't Mot.").  On June 7, 2011, Plaintiff filed a Cross-Motion For Judgment On The Administrative Record ("Pl. Mot."), together with attached Exhibits ("Pl. Ex. at 1-10").  On July 8, 2011, the Government filed a Reply ("Gov't Rep."), together with a Supplemental Administrative Record ("SAR 1-16").

## III.   DISCUSSION.

### A.   Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  *See* 28 U.S.C. § 1491.  The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages.  *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls upon the plaintiff.  *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The February 10, 2011 Complaint invokes the jurisdiction of the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) and 10 U.S.C. § 1201.  Compl. ¶ 2.  Therefore, the court has subject matter jurisdiction over the claims alleged for disability retirement therein.  *See Sawyer* v. *United States*, 930 F.2d 1577, 1580-81 (Fed. Cir. 1991) (holding that claims challenging disability status under 10 U.S.C. § 1201 may be adjudicated by the United States Court of Federal Claims).

### B.     Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (internal citations omitted).

The February 10, 2011 Complaint alleges that Plaintiff has suffered an injury in fact that can be determined in a specific amount and is traceable to the Army's unlawful determination of disability retirement pay and benefits. Compl. ¶ 22. Therefore, the court has determined that Plaintiff has standing to bring the claims alleged in the February 10, 2011 Complaint.

### C.     Standard For Judgment On The Administrative Record, Pursuant To RCFC 52.1.

A motion for judgment on the administrative record, pursuant to RCFC 52.1, is akin to an expedited trial on the record and has no counterpart in the Federal Rules of Civil Procedure. *See* RCFC 52.1, Rules Committee Note (July 13, 2009); *see also Bannum, Inc.* v. *United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) ("[T]he judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record."). Accordingly, on a motion for judgment on the administrative record, the court is required to determine whether the plaintiff has met the burden of proof to show that the relevant federal agency decision was without a rational basis or not in accordance with the law. *Id*. at 1348 (instructing the trial court to make "factual findings under RCFC [52.1] from the [limited] record evidence as if it were conducting a trial on the record"); *see also Afghan Am. Army Servs. Corp.* v. *United States*, 90 Fed. Cl. 341, 355 (2009) ("In reviewing cross-motions for judgment on the administrative record, the court must determine 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" (citations omitted)). The existence of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record, nor is the court required to conduct an evidentiary proceeding. *See Bannum*, 404 F.3d at 1353-54 ("RCFC [52.1] requires the [United States] Court of Federal Claims, when making a prejudice analysis in the first instance, to make factual findings from the record evidence as if it were conducting a trial on the record.").

**D.     The Government's May 6, 2011 Motion For Judgment On The Administrative Record.**

**1.     The Government's Argument.**

The Government argues that the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims have consistently held that a Soldier's failure to exercise his right to a formal PEB waives his ability to preserve a claim in this court. *See Stine* v. *United States*, 92 Fed. Cl. 776, 798 (2010) ("To the extent plaintiff alleges error by the [informal] PEB, [Plaintiff's] waiver precludes the [c]ourt from reviewing such allegations."); *see also Gant* v. *United States*, 63 Fed. Cl. 311, 318 (2004) ("By waiving a formal hearing, plaintiff prevented [the Government] from . . . having an opportunity to entertain any claim or objection and to develop a full record that this court could review."), *aff'd*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). In this case, Plaintiff waived the formal PEB hearing by initialing the entry on the last page of DA Form 199, stating "I concur and waive a formal hearing of my case." Gov't Mot. at 12.

Nevertheless, a waiver must be voluntary. *See Stine*, 92 Fed. Cl. at 792 (Plaintiff may "demonstrate involuntariness by showing, among other things, that he made the decision under duress, . . . that he was misled by his counsel's advice, . . . or that he was legally incompetent at the time of the waiver." (citations omitted)). Here, Plaintiff has not established that signing the waiver was involuntary or unknowing. Gov't Mot. at 14. Specifically, Plaintiff was not misled or misinformed, did not make the decision under duress, and was competent at the time he signed the waiver. Gov't Mot. at 14. Accordingly, Plaintiff waived his right to a judicial review of the informal PEB hearing. Gov't Mot. at 17.

**2.     Plaintiff's Response.**

Plaintiff responds that he only waived his right to a formal PEB hearing, not his right to judicial review of the informal PEB decision, since Army Regulations do not explain that this is a consequence of waiving a formal PEB hearing. Pl. Mot. at 7-8, 12. The cases cited by the Government are distinguishable because Plaintiff has not appealed to a board for correction of military records. Pl. Mot. 12-13. The court should narrowly construe waiver because military disability evaluation is non-adversarial and no right to counsel attaches until a formal PEB is convened. Pl. Mot. at 11 (citing Army Reg. 635-40 ¶ 4-21).

Even assuming that Plaintiff waived the right of judicial review, that waiver was unknowing and involuntary. Pl. Mot. at 9. First, Plaintiff was not aware of the totality of his disabilities, including asthma, sleep apnea, and mental health conditions, until after the informal PEB proceeding. Pl. Mot. at 9. Second, Plaintiff was misled because the Army failed to explain that waiver of judicial review would result from waiver of a formal PEB hearing. Pl. Mot. at 9-10. Finally, Plaintiff was not aware at the time of waiver that the MEB did not properly assess his range of joint motion in accordance with the Department of Veterans Affairs ("VA") disability worksheets. Pl. Mot. at 10.

### 3. The Court's Resolution.

The United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims have held that waiver of a formal PEB hearing also waives the right of judicial review of the informal PEB's determination in the United States Court of Federal Claims.[8] *See Gant*, 63 Fed. Cl. at 319 (holding that failure to contest the informal PEB's hearings waived the right to challenge them at the United States Court of Federal Claims), *aff'd*, 417 F.3d at 1332 (holding that judicial review was waived by voluntary acceptance of the "finding of unfitness for duty and the disability rating assigned to him by the preliminary PEB"), *cert. denied*, 546 U.S. 1043 (2005); *see also Stine*, 92 Fed. Cl. at 798 ("To the extent plaintiff alleges error by the [informal] PEB, [plaintiff's] waiver precludes the Court from reviewing such allegations."). It is undisputed that Plaintiff waived his right to a formal PEB review. AR 27. Thus, Plaintiff's waiver of a formal PEB hearing precludes judicial review of his case.[9]

Nonetheless, the waiver is ineffective if it was involuntary. *See Van Cleave* v. *United States*, 402 F.3d 1341, 1344 (Fed. Cir. 2005) (holding that a waiver is effective only if it is a "knowing waiver"). For example, waiver is involuntary if it results from misrepresentation or deception by Army. *See Moyer* v. *United States*, 190 F.3d 1314, 1320 (Fed. Cir. 1999) (holding that an act is deemed involuntary if it "results from misrepresentation or deception on the part of government officers"); *see also Gant*, 63 Fed. Cl. at 319 ("An act induced by misrepresentation can render that act involuntary."). Misrepresentation "can be caused by providing misleading information or by failing to provide relevant information." *Gant*, 63 Fed. Cl. at 319.

Plaintiff contends that his waiver was invalid because he was not aware of the full extent of his disabilities until after his informal PEB. Pl. Mot. at 9. Plaintiff, however, does not argue that the Army concealed the existence or extent of his disabilities. No case has ever held that a plaintiff's failure to understand the extent of his medical problems renders a waiver involuntary. Moreover, according to the medical records Plaintiff attached to his brief, he was well aware that he had asthma and sleep apnea prior to the PEB's evaluation on March 25, 2010. Pl. Ex. at 2 (noting Plaintiff's intermittent asthma, mild obstructive sleep apnea, hypertension, and dyslipidemia on March 8, 2010). Plaintiff previously had surgery to address his sleep apnea. *Id.* Plaintiff was given opportunities to bring these conditions the attention of the MEB and PEB but chose not to do so. AR 15, 27 (Plaintiff affirming that "the MEB adequately reflected the complete spectrum of the Soldier's injuries and/or illness").

---

[8] Plaintiff asserts that *Stine* and *Gant* are distinguishable because those cases reviewed decisions by a board for correction of military records. Pl. Mot. 12-13. The fact that those cases were brought before a board for correction had no bearing on the holding of those cases and therefore this distinction is irrelevant.

[9] Although barring judicial review of the informal PEB, waiver of a formal PEB evaluation is not a jurisdictional defect, as Plaintiff properly has invoked the court's Tucker Act jurisdiction through 10 U.S.C. § 1201, a money-mandating statute. *See Van Cleave*, 402 F.3d at 1344 ("[E]ven if acceptance of a PEB decision may act as a bar to a later claim . . . the bar is not jurisdictional in nature." (internal quotation marks omitted)).

Plaintiff also contends that he was misled because the Army failed to explain that waiver of judicial review would result from waiver of a formal PEB hearing. Pl. Mot. at 9-10. However, the case law clearly establishes that when a Soldier waives his right to challenge the findings of an informal PEB, he waives his right to challenge the informal PEB findings in the United States Court of Federal Claims. In *Gant*, the United States Court of Federal Claims observed that the military regulations and forms were silent on the impact of wavier of a formal PEB hearing on judicial review, but nonetheless concluded that waiving formal PEB review results in waiver of judicial review of the informal PEB decision. 63 Fed. Cl. at 319. Further, it is a "well-established rule that a citizen is presumed to know the law, and that ignorance of the law will not excuse." *Page* v. *United States*, 51 Fed. Cl. 328, 339, n.13 (2001) (internal quotation marks omitted).

Finally, Plaintiff asserts that his PEB Liaison Officer did not notify him that the MEB improperly measured his left shoulder and left wrist ranges of joint motion by failing to re-measure him after three repetitions of each joint. Pl. Mot. at 10. Assuming this is true, this argument is irrelevant because the PEB found these conditions to be unfitting and properly rated the conditions in accordance with the Veterans Affairs Schedule for Rating Disabilities ("VASRD"). AR 19. The VA rated Plaintiff's left wrist and left shoulder conditions at ten percent each, the same rating the Army gave these conditions, and Plaintiff does not suggest that he should have been rated higher for these conditions. Compl. ¶ 17. Further, his PEB Liaison Officer was only required to compare the PEB findings with Plaintiff's MEB findings, verify that the PEB did not overlook any condition that may substantially alter his benefits, and "[c]heck each [joint injury] to assure the member has been rated the most advantageous way." Army Reg. 635-40 ¶¶ C-7(b)(1)(a)-(b). Plaintiff has offered no evidence that he was not rated in the most advantageous way with respect to these two conditions. Therefore this alleged failure is not sufficient to make Plaintiff's waiver involuntary.

Therefore, the court has concluded that Plaintiff voluntarily waived judicial review of the informal PEB. Nevertheless, this does not preclude review of by the Army Board for Correction of Military Records ("ABCMR") or review by the United States Court of Federal Claims of any decision by that Board. *See Stine*, 92 Fed. Cl. at 794 ("[W]aiver of review of an [informal PEB] determination is not equivalent to waiver of the right to judicial review of subsequent administrative review of the case to determine whether the Navy had committed error." (internal quotation marks omitted)); *Van Cleave* v. *United States*, 70 Fed. Cl. 674, 677 (2006) ("[P]laintiff's voluntary acceptance of the informal PEB decision waived review by a formal Physical Evaluation Board, but did not necessarily prevent his appeal to the Board for Correction of Naval Records[.]").

## VI.   CONCLUSION.

Because waiver is not jurisdictional and does not preclude judicial review of subsequent administrative review of the case, this case is hereby remanded to the ABCMR for further administrative action pursuant to RCFC 52.2.[10] The case is stayed for the duration of remand proceedings. The ABCMR is directed to provide the court with a decision within 180 days. The

---

[10] RCFC 52.2(a) allows the court, *sua sponte*, to "order the remand of appropriate matters to an administrative or executive body or official." RCFC 52.2(a).

Government is directed to report to the court every 90 days on the status of the remand proceedings.

On remand, the ABCMR is to consider the following issues: whether Plaintiff's separation from active duty complied with applicable laws and policies; whether Plaintiff had unfitting physical conditions in addition to shoulder and wrist pain at the time of separation; and whether Plaintiff's disability rating was appropriate. The ABCMR is directed to take any corrective action the board deems appropriate based on its review.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**