# In the United States Court of Federal Claims

No. 11-90C

Filed: January 25, 2013

**TO BE PUBLISHED**

| | |
|---|---|
| ************************************** <br> * <br> * <br> NATHAN T. MEIDL, * <br> * <br> Plaintiff, * <br> * <br> v. * <br> * <br> THE UNITED STATES, * <br> * <br> Defendant. * <br> * <br> * <br> * <br> ************************************** | 10 U.S.C. § 1201 (2006) (compensable disabilities); <br> 10 U.S.C.A. § 1216a(b) (2012) (medical conditions considered in disability determinations); <br> Army Regulation 635-40 (physical evaluation for separation); <br> 38 C.F.R. § 4.3 (resolving reasonable doubt in disability ratings); <br> 38 C.F.R. § 4.7 (choosing between two disability evaluations); <br> RCFC 52.1 (judgment on the administrative record); <br> RCFC 52.2 (remanding to an administrative body). |

**Jason E. Perry**, Cheshire, Connecticut, Counsel for Plaintiff.

**Sheryl L. Floyd**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Captain Rachel A. Landsee**, United States Army Litigation Division, Of Counsel for Defendant.

### MEMORANDUM OPINION AND ORDER

**I.     RELEVANT FACTS.[1]**

On September 8, 1993, Nathan T. Meidl ("Plaintiff") enlisted in the Army Reserve Officers' Training Corps ("Army ROTC") program while attending the University of Wisconsin. AR 209. On April 9, 1996, Plaintiff entered active duty in the United States Army. AR 99. On April 30, 2000, he was appointed as a commissioned officer in the Active Guard Reserve ("AGR"). AR 167.

---

[1] The relevant facts are derived from the May 6, 2011 Administrative Record ("AR 1-211"), as supplemented on July 8, 2011 ("SAR 1-16"), June 7, 2011 ("Pl. Ex. at 1-10"), and February 27, 2012 ("Gov't SR at A1-A38"), and discussed in large part in *Meidl v. United States*, 100 Fed. Cl. 1 (2011) ("*Meidl I*").

In 2000, while serving in the AGR, Plaintiff began to experience bilateral foot pain that was aggravated by prolonged standing and running. AR 10. In 2001, he was diagnosed with *pes planus*.[2] *Id.* In early 2002, Plaintiff began to experience pain as a result of degenerative changes to his left wrist. AR 3, 10.

On October 5, 2005, Plaintiff entered into active duty in Iraq as an Acquisitions Corps Officer. AR 10, 95. In April 2006, while lifting weights, Plaintiff tore his left pectoralis major and injured his shoulder, requiring surgery. AR 10, 95. As a result of these injuries, Plaintiff had a limited range of motion and difficulty bearing more than five pounds of weight. AR 10. On April 26, 2006, he was diagnosed with hypertension. AR 11.

In October 2008, Plaintiff again was deployed to Iraq for a temporary tour of duty. AR 10. After his return to the United States, in April 2009, Plaintiff's *pes planus* was "graded as severe, bilaterally with pronation, intolerance to weight bearing, extended standing, and extended walking." AR 10-11. In June 2009, Plaintiff began to develop bilateral *plantar fasciitis*[3] that was painful when he wore military footwear. AR 11. In 2009, Plaintiff suffered a basketball injury; his left Achilles tendon ruptured, requiring orthopedic surgery and resulting in residual heel pain. AR 11. Thereafter, Plaintiff's military physicians directed that he be evaluated for physical disability by a Medical Evaluation Board ("MEB").[4] AR 1.

On November 12, 2009, Plaintiff was examined at an orthopedic clinic in preparation for evaluation by an MEB.[5] AR 1-3. The clinic examined Plaintiff's left shoulder, his left ankle, a surgical scar, and his left wrist. AR 2. The clinic concluded that Plaintiff's left shoulder and wrist pain did not meet Army retention standards, because they interfered with his ability to perform military duties, but that Plaintiff's left ankle pain met retention standards. AR 2. The orthopedic clinic did not examine Plaintiff's *pes planus* or *plantar fasciitis*. AR 28.

On February 26, 2010, Plaintiff's Commander recommended that the Army not retain Plaintiff due to his left shoulder injury, left wrist pain, bilateral *pes planus*, and bilateral *plantar*

---

[2] *Pes planus* is the medical term for flatfoot. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1441 (31st ed. 2007) ("DORLAND'S").

[3] *Plantar fasciitis* refers to inflammation of the sole of the foot. *See* DORLAND'S at 692, 1476.

[4] The Administrative Record does not contain a document reflecting the date of this referral.

[5] The Army may convene a medical evaluation "when a question arises as to the Soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability." Army Reg. 635-40 ¶¶ 4-6, 4-7, 4-8. A MEB is convened to "document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status." Army Reg. 635-40 ¶¶ 4-10. If the MEB finds that a Soldier is not medically qualified for retention, a referral is made to a Physical Evaluation Board. *Id.*

*fasciitis*, because Plaintiff could not perform his Military Occupational Specialty ("MOS") as an acquisition or logistics officer. AR 8.

On February 28, 2010, however, an MEB considered Plaintiff's medical condition and concluded that, due to the condition of his left shoulder and left wrist and his *pes planus*, and *plantar fasciitis*, Plaintiff did not meet the Army's retention standards, but his left Achilles tendon rupture and hypertension met retention standards. AR 10-13. As a result, the MEB recommended a referral to a Physical Evaluation Board ("PEB")[6] for further evaluation. AR 13.

On March 9, 2010, before the PEB convened, Plaintiff was afforded an opportunity to have the MEB's findings reviewed by an impartial medical professional and to review the MEB's findings and submit any disagreement. AR 14. Plaintiff declined the opportunity for an impartial medical evaluation and did not dispute the findings and recommendation of the MEB. AR 15-17.

On March 25, 2010, the PEB considered Plaintiff's medical records and determined that his chronic shoulder and wrist pain rendered him unfit for service, at a twenty percent disability.[7] AR 19-20. The PEB, however, determined that the bilateral *pes planus*, bilateral *plantar fasciitis*, left Achilles tendon rupture, and hypertension did not warrant a disability rating. AR 19. Consequently, the PEB recommended a discharge with severance pay at a twenty percent disability rate. AR 20.

On March 31, 2010, after the PEB issued a determination, the orthopedic clinic also issued an Addendum indicating that, although it had not examined Plaintiff's bilateral *pes planus* and *plantar fasciitis*, an examination by a podiatrist on April 13, 2009 found that these conditions did not meet retention standards. AR 28.

On April 7, 2010, Plaintiff acknowledged that he was informed of his rights by the PEB Liaison Officer. AR 27. Plaintiff was given three options: (1) accept the PEB preliminary findings and waive his right to a formal hearing; (2) contest the preliminary findings and waive his right to a formal hearing; and (3) contest the preliminary findings and demand a formal hearing. AR 27. Plaintiff concurred with the PEB findings and waived a formal hearing of his case. AR 27.

---

[6] PEBs have authority to evaluate a Soldier's physical disability based on the following three factors: 1) whether the Soldier is physically fit or unfit to perform the duties of the Soldier's office, grade, rank, or rating; 2) whether the disability is of a permanent nature; and 3) whether the disability meets the criteria established by law for compensation. *See* Army Reg. 635-40 ¶¶ 4-19(a)(1)-(3). If the PEB determines that a Soldier is unfit because of a physical disability and is entitled to benefits, the PEB determines a percentage rating for each disability rendering the Soldier unfit for duty. *See* Army Reg. 635-40 ¶ 4-19(i).

[7] The Veterans Affairs Schedule for Rating Disabilities is used to determine disability ratings. *See* Army Reg. 635-40 ¶ 4-19.

On June 27, 2010, Plaintiff was diagnosed with severe obstructive sleep apnea. Pl. Ex. at 6-7.

On July 13, 2010, Plaintiff was discharged from active duty in the Army with disability severance pay, but did not receive medical retirement because his disability rating was less than thirty percent and he had fewer than twenty years of service. AR 19, 30.

## II.   PROCEDURAL HISTORY.

On February 10, 2011, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims alleging that he was denied disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201. Compl. ¶ 22. The Complaint also alleges that the PEB failed to: rate his disabilities at an eighty percent level; provide an adequate MEB evaluation; and apply applicable evidentiary standards. Compl. ¶ 22.

On May 6, 2011, the Government filed the Administrative Record and a Motion For Judgment On The Administrative Record. On June 7, 2011, Plaintiff filed a Cross-Motion For Judgment On The Administrative Record, together with attached Exhibits. On July 8, 2011, the Government filed a Reply, together with a Supplemental Administrative Record.

On August 10, 2011, the United States Court of Federal Claims remanded the case to the Army Board for Correction of Military Records ("ABCMR") for further administrative action pursuant to RCFC 52.2.[8] *See Meidl I*. Specifically, the court ordered the ABCMR to consider the following issues: (1) whether Plaintiff's separation from active duty complied with applicable laws and policies; (2) whether Plaintiff had unfitting physical conditions in addition to shoulder and wrist pain at the time of separation; and (3) whether Plaintiff's disability rating was appropriate. *Id.* at 8. The case was stayed during the remand. *Id.*

On October 24, 2011, the United States Army Physical Disability Agency ("USAPDA") issued an advisory opinion "[r]ecommending no change to the Plaintiff's military records." Gov't SR at A35-A38. On December 13, 2011, Plaintiff responded that the USAPDA factual findings were incorrect and that the recommendation to deny relief was contrary to law and did not address the injustices in the case. Gov't SR at A18-A34.

On February 2, 2012, the ABCMR denied Plaintiff's request for relief. Gov't SR at A3-A17. The ABCMR found: (1) Plaintiff's separation from service complied with applicable laws and policies; (2) Plaintiff properly was processed through the Army's physical disability evaluation system; (3) Plaintiff was provided an appropriate disability rating based on the unfitting conditions identified by the PEB; and (4) Plaintiff's rights were fully protected during the separation process. Gov't SR at A15-A17.

On May 18, 2012, Plaintiff filed a Supplemental Brief In Support Of Plaintiff's Motion For Judgment On The Administrative Record in the United States Court of Federal Claims ("Pl.

---

[8] The court, *sua sponte*, may "order the remand of appropriate matters to an administrative or executive body or official." RCFC 52.2(a).

Supp."). On June 22, 2012, the Government filed a Supplemental Brief In Opposition To Plaintiff's Cross-Motion For Judgment On The Administrative Record And In Support Of Defendant's Motion For Judgment On The Administrative Record ("Gov't Supp."). On July 10, 2012, Plaintiff filed a Reply ("Pl. Reply").

## II.   DISCUSSION.

### A.   Jurisdiction And Standing.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491. The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1) (establishing lack of subject matter jurisdiction as a defense).

In *Meidl I*, the court determined that the February 10, 2011 Complaint invoked the jurisdiction of the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) as it challenged the determination of Plaintiff's disability status under 10 U.S.C. § 1201. Compl. ¶ 2; *see also Sawyer* v. *United States*, 930 F.2d 1577, 1580-81 (Fed. Cir. 1991) (holding that claims challenging disability status under 10 U.S.C. § 1201 may be adjudicated by the United States Court of Federal Claims). In addition, although Plaintiff "voluntarily waived judicial review of the informal PEB[,]" he retained the right to seek administrative review of the informal PEB decision and judicial review of that administrative review. *See Meidl I*, 100 Fed. Cl. at 8. The court remanded the case to the ABCMR. *Id.*

In addition, in *Meidl I*, the court determined that the February 10, 2011 Complaint alleged that Plaintiff suffered an injury in fact that can be determined in a specific amount and is traceable to the Army's unlawful determination of disability retirement pay and benefits. Compl. ¶ 22; *see also Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) ("[A] plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." (internal citations omitted)).

### B. Standard For Judgment On The Administrative Record, Pursuant To RCFC 52.1.

A motion for judgment on the administrative record, pursuant to RCFC 52.1, is akin to an expedited trial on the record and has no counterpart in the Federal Rules of Civil Procedure. *See* RCFC 52.1, Rules Committee Note (July 13, 2009); *see also Bannum, Inc.* v. *United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) ("[T]he judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record."). Accordingly, on a motion for judgment on the administrative record, the court is required to determine whether the plaintiff has met the burden of proof to show that the relevant federal agency decision was without a rational basis or not in accordance with the law. *Id*. at 1348 (instructing the trial court to make "factual findings under RCFC [52.1] from the [limited] record evidence as if it were conducting a trial on the record"); *see also Afghan Am. Army Servs. Corp.* v. *United States*, 90 Fed. Cl. 341, 355 (2009) ("In reviewing cross-motions for judgment on the administrative record, the court must determine 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" (citations omitted)). The existence of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record, nor is the court required to conduct an evidentiary proceeding. *See Bannum*, 404 F.3d at 1353-54 ("RCFC [52.1] requires the [United States] Court of Federal Claims, when making a prejudice analysis in the first instance, to make factual findings from the record evidence as if it were conducting a trial on the record.").

The United States Court of Federal Claims "reviews a [board for correction of military records] decision to determine if it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Roth* v. *United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). A plaintiff must "show by cogent and clearly convincing evidence" that the board's decision failed by at least one of those standards. *Wronke* v. *Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).

The court now applies this standard of review to the ABCMR's February 2, 2012 remand decision.

### C. Whether The Army Board For Correction Of Military Records' Finding Regarding Plaintiff's *Pes Planus* And *Plantar Fasciitis* Was Contrary To Law, Arbitrary, Capricious, Or Unsupported By Substantial Evidence.

Plaintiff asserts that the ABCMR decision violated 10 U.S.C. §§ 1201, 1216a; 38 C.F.R. §§ 4.3, 4.7; and Army Reg. 635-40 ¶ 4-19 and was arbitrary and capricious. Pl. Supp. at 5-6.

Plaintiff asserts that the ABCMR was arbitrary and capricious in pointing to the longstanding nature of Plaintiff's foot conditions as evidence that they did not make him unfit for service. Pl. Supp. at 5 ("There is no statutory or regulatory reason why the timing of these disabilities . . . was a disqualifying factor for compensability." (citing 10 U.S.C. § 1201 (2006) (basing disability determinations on conditions "not noted at the time of the [service] member's entrance on active duty") and Army Reg. 635-40 ¶ 4-19 (compensating disabilities "incurred or

6

aggravated while the Soldier was entitled to basic pay"))).  The Government responds that Plaintiff's ability to continue performing his duties after his foot conditions were diagnosed evidences that they did not render him unfit to serve.  Gov't Supp. at 8 (quoting Army Reg. 635-40 ¶ 3-1 ("[I]t is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier reasonably may be expected to perform because of their office, grade, rank, or rating.")).  The ABCMR also quoted Army Reg. 635-40 ¶ 3-1 and, by implication, applied it when noting Plaintiff's "outstanding duty performance record over the period he suffered from the conditions."  Gov't SR at A13, A15.  For these reasons, the court has determined that the ABCMR's consideration of the timing of Plaintiff's disabilities was not arbitrary or capricious.

Next, Plaintiff argues that "there is no statutory or regulatory requirement that a condition be 'aggressively treated with appropriate medication' before being compensable."  Pl. Supp. at 5.  The Government does not challenge that assertion.  Gov't Supp. at 6-9.  But, Plaintiff cites no statute nor regulation that barred the PEB from considering the treatment of Plaintiff's condition as evidence of the condition's impact on his fitness for duty.  Pl. Supp. 3-6.  For this reason, the court also has determined that the ABCMR's consideration of Plaintiff's medical treatment was not contrary to law.

Plaintiff also asserts that the ABCMR failed to consider evidence from Plaintiff's Commander as to the consequences of Plaintiff's foot conditions.  Pl. Supp. at 5-6.  The record, however, confirms that the ABCMR did consider that evidence:

> Although the [C]ommander included these conditions in his statement regarding the applicant's fitness for duty, the limitation on the applicant's duty performance only became apparent with the progression of the left shoulder and wrist pain.  The medical evidence related to these conditions do [sic] not show his bilateral foot pain disqualified the applicant from taking an alternate [Army Physical Fitness Test] or rendered him unfit to perform his duties as a field grade acquisition officer.

Gov't SR at A15.  Instead of failing to consider the evidence from Plaintiff's Commander, the ABCMR merely reached a conclusion with which Plaintiff disagreed, and that disagreement does not establish that the ABCMR was arbitrary or capricious in its consideration of the Commander's statement.

Plaintiff adds that the ABCMR also failed to consider that the Veterans Affairs Schedule for Rating Disabilities required a fifty percent disability rating for Plaintiff's *pes planus* and *plantar fasciitis*.  Pl. Supp. at 6 (citing 38 C.F.R. § 4.3 (stating that doubt regarding a disability should be resolved in favor of the claimant); 38 C.F.R. § 4.7 ("Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating."); and AR 28 (Medical Board Addendum recommending that, based on Plaintiff's Apr. 13, 2009 podiatry evaluation, the PEB consider Plaintiff's foot conditions in evaluating him for a disability)).  Because the ABCMR concluded that Plaintiff's foot conditions were not unfitting, the ABCMR had no reason to address the appropriate disability rating for those conditions.  *See* 10 U.S.C.A. § 1216a(b).  For these reasons, the court has further determined that the ABCMR's failure to

address the appropriate disability rating for Plaintiff's foot conditions was neither arbitrary nor capricious.

Section 1216a provides that disability ratings "shall take into account *all medical conditions, whether individually or collectively*, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." 10 U.S.C.A. § 1216a(b) (2012) (emphasis added). Plaintiff argues that although the ABCMR concluded that his foot conditions alone did not render him unfit for duty, it failed to consider whether his foot conditions contributed to rendering him unfit for duty. Pl. Supp. at 6; Pl. Reply at 10. The Government does not counter this argument; in fact, it replaces the words "whether individually or collectively" with an ellipsis when it quotes from section 1216a(b). Gov't Supp. at 8-9 ("[T]he statute provides that, in making rating determinations, the military will 'take into account all medical conditions . . . that render the member unfit to perform the duties of the member's office, grade, rank, or rating.'"). The ABCMR Record of Proceedings supports Plaintiff's contention. Gov't SR at A3-A17. The ABCMR reviewed "whether [Plaintiff] had unfitting physical conditions in addition to the shoulder and wrist pain at the time of separation," instead of whether Plaintiff had physical conditions in addition to his shoulder and wrist pain that contributed to rendering him unfit for service. Gov't SR at A14; *see also* Gov't SR at A15 (discussing whether Plaintiff "had other unfitting physical conditions in addition to shoulder and wrist pain," rather than whether other conditions contributed to rendering Plaintiff unfit for service). The ABCMR's review of the PEB's reasoning reflects this focus on whether the foot conditions, in isolation, were unfitting. Gov't SR at A15. The fact that the conditions were "long standing" and had not previously rendered Plaintiff unfit for service (Gov't SR at A15) had no bearing on whether they contributed to his unfitness, once he incurred his shoulder and wrist injuries. Furthermore, the ABCMR concluded that Plaintiff's initial concurrence with the PEB's findings "shows he understood his unfitness was *primarily* related to his left shoulder and wrist pain." Gov't SR at A15 (emphasis added). Section 1216a(b), however, does not limit disability ratings to the primary cause of a soldier's unfitness; it requires that disability ratings "take into account all medical conditions, whether individually or collectively, that render the member unfit." 10 U.S.C.A. § 1216a(b).

By failing to consider whether Plaintiff's foot conditions contributed to rendering him unfit, the ABCMR violated the applicable statute and acted arbitrarily and capriciously. *See Ala. Aircraft Indus. Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) ("Courts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem[.]'" (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

### D. Whether The Army Board For Correction Of Military Records' Finding Regarding Plaintiff's Sleep Apnea Was Arbitrary, Capricious, Contrary To Law, Or Unsupported By Substantial Evidence.

Plaintiff raises two arguments regarding his sleep apnea: it was unfitting at the time of Plaintiff's MEB and PEB and should have been rated then; or it became unfitting after Plaintiff's MEB and PEB, but before his separation from the Army, so that the MEB and PEB decisions were legally insufficient. Pl. Supp. at 8 (citing Army Reg. 635-40 ¶ 2-8, requiring MEBs be

8

"complete, accurate, and fully documented"). The Government argues that "[i]t is evident from the fact that Mr. Meidl did not raise any concerns about his sleep apnea before the MEB or the PEB that this condition was not unfitting at the time of his separation from the Navy [sic]." Gov't Supp. at 11. But this is a *non sequitur*, because the MEB and PEB evaluations occurred months before Plaintiff's separation from the Army. AR 1-3 (stating that the orthopedic evaluation for Plaintiff's MEB occurred on Nov. 12, 2009); AR 16-17 (stating that Plaintiff's MEB proceedings were on Mar. 2, 2010); AR 19-20 (stating that the PEB considered Plaintiff's case on Mar. 25, 2010); AR 19, 30 (stating that Plaintiff was discharged on July 13, 2010). The ABCMR addressed only whether Plaintiff's sleep apnea was unfitting at the time of his MEB and PEB evaluations. Gov't SR at A16 (stating that the evidence available to the MEB and PEB did not support the conclusion that Plaintiff's sleep apnea was unfitting, and listing that evidence). Although the ABCMR wrote that "the medical evidence related to this condition is not sufficiently compelling to show this condition was unfitting *at the time of his separation*," the evidence cited for that proposition is that Plaintiff did not raise sleep apnea "before the MEB or PEB . . . during the [Physical Disability Evaluation System] process." Gov't SR at A16 (emphasis added). The ABCMR report also fails to document any consideration given to the possibility that Plaintiff's condition became unfitting after the MEB and PEB but before his separation from the Army. By failing to consider whether Plaintiff's sleep apnea became unfitting after the MEB and PEB evaluations but before his separation from the Army, the ABCMR acted arbitrarily and capriciously. *See Ala. Aircraft Indus. Inc.-Birmingham*, 586 F.3d at 1375 ("Courts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem[.]'" (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43)).

### III. CONCLUSION.

For these reasons, the court has determined that this case must be remanded to the ABCMR for further administrative action, pursuant to RCFC 52.2. The case is stayed for the duration of remand proceedings. The Government is directed to report to the court 90 days hereafter as to on the status of the remand proceedings. The ABCMR is directed to provide the court with a decision within 180 days.

On remand, the ABCMR is to consider the following issues: whether Plaintiff's foot conditions contributed to rendering him unfit; whether Plaintiff's sleep apnea became unfitting after the MEB and PEB proceedings, but before Plaintiff's separation from the Army; and, in light of its resolution of those two issues, whether, Plaintiff's disability rating was appropriate. The ABCMR is directed to take any corrective action deemed appropriate based on its review and to advise the court of the same.

**IT IS SO ORDERED**.

 s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**