# In the United States Court of Federal Claims

No. 11-90C
Filed: January 30, 2014
**TO BE PUBLISHED**

| | |
|---|---|
| ************************************** | 10 U.S.C. § 1201 (retirement or separation for physical disability); |
| NATHAN T. MEIDL, | 10 U.S.C. § 1216a(b) (medical conditions considered in disability determinations); |
| Plaintiff, | 28 U.S.C. § 1491 (Tucker Act Jurisdiction); |
| v. | 32 C.F.R. § 581.3(c)(2)(iii) (ABCMR establishment and functions); |
| THE UNITED STATES, | Army Regulation 623-3 (evaluation reporting system); |
| Defendant. | Army Regulation 623-105 (officer evaluation reporting system); |
| | Army Regulation 635-40 (physical evaluation for separation); |
| | Department of Defense Instruction 1332.38 (general criteria for making unfitness determinations); |
| | RCFC 52.1 (judgment on the administrative record); |
| ************************************** | RCFC 52.2(a) (remand to "administrative or executive body or official"). |

**Jason E. Perry**, Cheshire, Connecticut, Counsel for Plaintiff.

**Sheryl L. Floyd**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Captain Rachel A. Landsee**, United States Army Litigation Division, Of Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

## I.     RELEVANT FACTS.[1]

On September 8, 1993, Nathan T. Meidl ("Plaintiff") enlisted in the Army Reserve Officers' Training Corps ("Army ROTC") program while attending the University of Wisconsin. AR 209.  On April 9, 1996, Plaintiff entered active duty in the United States Army.  AR 10, 194–204.  On April 30, 2000, he was appointed as a commissioned officer in the Active Guard Reserve ("AGR") program.  AR 167.

Later in 2000, while serving in the AGR, Plaintiff began to experience bilateral foot pain that was aggravated by prolonged standing and running.  AR 10.  In 2001, he was diagnosed with *pes planus*.[2]  AR 10.  In early 2002, Plaintiff began to experience pain in his left wrist that was aggravated by daily activities, as a result of degenerative changes to his left wrist joint.  AR 3, 10.

On October 5, 2005, Plaintiff entered into active duty services in Iraq as an Acquisitions Corps Officer.  AR 10, 95.  In April 2006, while lifting weights, he tore his left pectoralis major and injured his shoulder, requiring surgery.  AR 10.  Due to these injuries, Plaintiff had a limited range of motion and difficulty bearing more than five pounds of weight.  AR 10.  On April 26, 2006, he was diagnosed with hypertension.  AR 11.  As a result of his injuries and surgical treatment, Plaintiff reverted to AGR status.  AR 10.

Plaintiff's Officer Evaluation Report ("OER")[3] for the period ending May 9, 2008 ("2008 OER") lists his promotion potential as "outstanding performance, must promote," and explains that Plaintiff should be promoted to Lieutenant Colonel "at the first opportunity."  AR 64–65.  That same OER also indicates that Plaintiff passed his Army Physical Fitness Test ("APFT") on April 15, 2008.  AR 64.

---

[1] The relevant facts discussed below were set forth in *Meidl v. United States*, 100 Fed. Cl. 1 (2011) ("*Meidl I*") and *Meidl v. United States*, 108 Fed. Cl. 570 (2013) ("*Meidl II*"), and are recited here in sum.  These facts were derived from the May 6, 2011 Administrative Record ("AR 1–211"), as supplemented on June 7, 2011 ("Pl. Ex. at 1–10"), July 8, 2011 ("SAR 1–16"), February 27, 2012 ("Gov't SR I at A1–A38"), and April 24, 2013 ("Gov't SR II at 1–14").

[2] *Pes planus* is the medical term for flatfeet.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1441 (31st ed. 2007) ("DORLAND'S").

[3] OERs are part of the Army's Officer Evaluation System, a system that "identifies officers who are best qualified for promotion and assignment to positions of higher responsibility . . . . [based on an evaluation of an officer's] performance and potential."  Army Reg. 623-105, ¶ 1-8a(1)–(2).  Under the OER system, a senior officer evaluates, "rates" and provides a performance evaluation of a subordinate officer, based on an examination of how well the rated officer fulfilled the duties and objectives assigned to him or her, how an officer achieved those objectives, and "how well the officer complied with [the] professional standards [of the officer corps]."  Army Reg. 623-105, ¶ 1-10a; *see also* Army Reg. 623-3, ¶ 1-8(4)(a) (explaining that performance evaluations "focus on a Soldier's duty performance, or how well a Soldier performs his or her assigned tasks and meets the Army values as judged by the rating officials").

2

From October 10, 2008 to October 21, 2008, Plaintiff was again deployed to Iraq for a temporary tour of duty. AR 10. After his return, in April 2009, his *pes planus* was "graded as severe, bilaterally with pronation, intolerance to weight bearing, extended standing, and extended walking." AR 10–11. In June 2009, Plaintiff began to develop bilateral *plantar fasciitis*[4] that was painful when he wore military foot wear. AR 11. In 2009, Plaintiff's left Achilles tendon ruptured from playing basketball, requiring orthopedic surgery and resulting in residual heel pain. AR 11. Thereafter, Plaintiff's military physicians directed that he be evaluated for physical disability by a Medical Evaluation Board ("MEB").[5]

Plaintiff's OER for the period ending May 9, 2009 ("2009 OER") explained that "his permanent [physical] profile prevents him from deploying, performing the APFT and weapons qualification." AR 59. The same OER, however, listed his potential for promotion as "best qualified," and explains that Plaintiff "continued his superb performance as an Assistant Product Manager in Heavy Tactical Vehicles during this rating period." AR 59. The OER further provided that Plaintiff "exhibits all the tools necessary to perform at the next higher level [of promotion], but his permanent profile prohibits him from doing so." AR 59.

On November 12, 2009, Plaintiff was examined at an orthopedic clinic in preparation for evaluation by a MEB.[6] AR 1–3. The clinic examined Plaintiff's left shoulder, his left ankle, a surgical scar, and his left wrist. AR 2. The clinic concluded that Plaintiff's left shoulder and wrist pain did not meet Army retention standards because they interfered with his ability to perform military duties. AR 2–3. The clinic concluded that Plaintiff's left ankle pain, however, met retention standards. AR 2. The orthopedic clinic did not examine Plaintiff's *pes planus* or *plantar fasciitis*. AR 28.

On February 26, 2010, Plaintiff's Commander recommended that the Army not retain Plaintiff due to his left shoulder injury, left wrist pain, bilateral *pes planus*, and bilateral *plantar fasciitis*, because Plaintiff could not perform his Military Occupational Specialty ("MOS") as an acquisition or logistics officer. AR 8.

On February 28, 2010, a MEB considered Plaintiff's medical condition and concluded that his left shoulder, left wrist, *pes planus*, and *plantar fasciitis* did not meet the Army's retention standards. AR 10–13. The MEB found, however, that Plaintiff's left Achilles tendon

---

[4] *Plantar fasciitis* refers to inflammation of the sole of the foot. *See* DORLAND'S at 692, 1476.

[5] The AR does not contain a document reflecting the date of this referral.

[6] The Army may convene a medical evaluation of a Soldier "when a question arises as to the Soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability." Army Reg. 635-40 ¶¶ 4-6, 4-7, 4-8. A MEB is convened to "document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status." Army Reg. 635-40 ¶ 4-10. If the MEB finds that a Soldier is not medically qualified for retention, it will recommend referral to a Physical Evaluation Board. *Id.*

rupture and hypertension met retention standards. AR 13. As a result, the MEB recommended referral to a Physical Evaluation Board ("PEB")[7] for further evaluation. AR 13.

On March 9, 2010, before the PEB convened, Plaintiff was afforded an opportunity to have the MEB's findings reviewed by an impartial medical professional. AR 14. In addition, Plaintiff was afforded the opportunity to review the MEB's findings to decide whether he concurred, and if not, to submit a statement explaining any disagreement. AR 14. Plaintiff declined the opportunity for an impartial medical evaluation and did not dispute the findings and recommendation of the MEB. AR 15–17.

On March 25, 2010, the PEB considered Plaintiff's medical records, determined that Plaintiff's chronic shoulder pain and wrist pain conditions rendered him unfit for service, and rated each at a ten percent disability for a total of twenty percent disability.[8] AR 19–20. The PEB, however, determined that the bilateral *pes planus*, bilateral *plantar fasciitis*, left Achilles tendon, and hypertension were not unfitting conditions, and thus were not rated. AR 19. Therefore, the PEB recommended discharge with severance pay at a twenty percent disability rate. AR 20.

On March 31, 2010, after the PEB issued a determination, the orthopedic clinic issued an Addendum indicating that although it had not examined Plaintiff's bilateral *pes planus* and *plantar fasciitis*, an examination by a podiatrist on April 13, 2009 found that these conditions did not meet retention standards. AR 28.

On April 7, 2010, Plaintiff acknowledged that he was informed of his rights by the PEB Liaison Officer ("PEBLO"). AR 21–27. Plaintiff was presented with three options: (1) accept the preliminary findings of the PEB and waive his right to a formal hearing; (2) contest the preliminary findings and waive his right to a formal hearing; and (3) contest the preliminary findings and demand a formal hearing. AR 21–27. Plaintiff decided to concur with the result of the PEB and waived a formal hearing of his case. AR 27.

Plaintiff's OER for the period ending April 15, 2010 ("2010 OER") stated that Plaintiff exhibited "[e]xceptionally outstanding performance." AR 38.

On June 27, 2010, Plaintiff was diagnosed with severe obstructive sleep apnea. Pl. Ex. at 6–7.

---

[7] PEBs have authority to evaluate a Soldier's physical disability based on the following three factors: (1) whether the Soldier is physically fit or unfit to perform the duties of the Soldier's office, grade, rank, or rating; (2) whether the disability is of a permanent nature; and (3) whether the disability meets the criteria established by law for compensation. *See* Army Reg. 635-40 ¶¶ 4-19(a)(1)–(3). If the PEB determines that a Soldier is unfit because of a physical disability and is entitled to benefits, the PEB determines a percentage rating for each disability rendering the Soldier unfit for duty. *See* Army Reg. 635-40 ¶ 4-19(i).

[8] The Veterans Affairs Schedule for Rating Disabilities is used in deriving percentage ratings. *See* Army Reg. 635-40 ¶ 4-19.

On July 13, 2010, Plaintiff was discharged from active duty in the Army with disability severance pay, but did not receive medical retirement since his disability rating was less than thirty percent and he had less than twenty years of service. AR 19, 30.

## II.   PROCEDURAL HISTORY.

On February 10, 2011, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims alleging that he was denied disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201. Compl. ¶ 22. The Complaint also alleges that the PEB failed to rate his disabilities at an eighty percent level, provide an adequate MEB evaluation, and apply applicable evidentiary standards. Compl. ¶ 22.

On May 6, 2011, the Government filed the Administrative Record and a Motion For Judgment On The Administrative Record. On June 7, 2011, Plaintiff filed a Cross-Motion For Judgment On The Administrative Record, together with attached Exhibits. On July 8, 2011, the Government filed a Reply, together with a Supplemental Administrative Record.

On August 10, 2011, the United States Court of Federal Claims remanded the case to the Army Board for Correction of Military Records ("ABCMR") for further administrative action pursuant to RCFC 52.2.[9]  *See Meidl I*, 100 Fed. Cl. at 8.   Specifically, the court ordered the ABCMR to consider the following issues: (1) whether Plaintiff's separation from active duty complied with applicable laws and policies; (2) whether Plaintiff had unfitting physical conditions in addition to shoulder and wrist pain at the time of separation; and (3) whether Plaintiff's disability rating was appropriate. *Id.*  The case was stayed during the remand. *Id.*

On October 24, 2011, the United States Army Physical Disability Agency ("USAPDA") issued an advisory opinion "[r]ecommending no change to the Plaintiff's military records." Gov't SR I at A35–A38. On December 13, 2011, Plaintiff responded that the USAPDA factual findings were incorrect and that the recommendation to deny relief was contrary to law and did not address the injustices in this case. Gov't SR I at A18–A34.

On February 2, 2012, the ABCMR denied Plaintiff's request for relief. Gov't SR I at A3–A17. The ABCMR found: (1) Plaintiff's separation from service complied with applicable laws and policies; (2) Plaintiff properly was processed through the Army's physical disability evaluation system; (3) Plaintiff was provided an appropriate disability rating, based on the unfitting conditions identified by the PEB; and (4) Plaintiff's rights were fully protected during the separation process. Gov't SR I at A15–A17.

On May 18, 2012, Plaintiff filed a Supplemental Brief In Support Of Plaintiff's Motion For Judgment On The Administrative Record. On June 22, 2012, the Government filed a Supplemental Brief In Opposition To Plaintiff's Cross-Motion For Judgment On The

---

[9] The court, *sua sponte*, may "order the remand of appropriate matters to an administrative or executive body or official." RCFC 52.2(a).

Administrative Record And In Support Of Defendant's Motion For Judgment On The Administrative Record.  On July 10, 2012, Plaintiff filed a Reply.

On January 25, 2013, the court determined that, by failing to consider whether Plaintiff's foot conditions "contributed to rendering him unfit," the February 2, 2012 ABCMR decision was arbitrary and capricious and violated 10 U.S.C. § 1216a(b).  *See Meidl II*, 108 Fed. Cl. at 577.  The court also determined that the ABCMR's failure to consider whether Plaintiff's sleep apnea became unfitting after the MEB and PEB evaluations, but before his separation from the Army, was arbitrary and capricious, since it entirely ignored "an important aspect of the problem."  *Id.* at 577–78 (internal citations omitted).  Accordingly, the court again remanded the case, pursuant to RCFC 52.2, instructing the ABCMR to consider whether:  (1) Plaintiff's foot conditions contributed to rendering him unfit; (2) Plaintiff's sleep apnea became unfitting after the MEB and PEB proceedings, but before Plaintiff's separation from the Army; and (3) in light of the resolution of those two issues, whether Plaintiff's disability rating was appropriate.  *Id*. at 578.

On April 11, 2013, the ABCMR ruled, on remand, that: (1) there was insufficient evidence to overturn the PEB's determination that Plaintiff's foot conditions did not contribute to his unfitness; (2) Plaintiff's sleep apnea did not render him unable to perform his duties and was not unfitting, because it was corrected by medication; and (3) Plaintiff's disability rating was appropriate, in light of the resolution of the preceding issues.  Gov't SR II at 12–13 ("the ABCMR's decision").

On July 10, 2013, Plaintiff filed a Motion For Judgment On The Administrative Record ("Pl. Mot. JAR").  On September 4, 2013, the Government filed a Cross-Motion And Response ("Gov't Opp. & Cross-Mot.").  On October 7, 2013, Plaintiff filed a Reply And Response To Defendant's Cross Motion For Judgment on the Administrative Record ("Pl. Reply").  On October 31, 2013, the Government filed a Reply ("Gov't Reply").

### III.  DISCUSSION.

#### A.  Jurisdiction and Standing.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  *See* 28 U.S.C. § 1491.  The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages.  *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source

of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1) (establishing lack of subject matter jurisdiction as a defense).

In *Meidl I*, the court determined that the February 10, 2011 Complaint invoked the jurisdiction of the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), as it challenged the determination of Plaintiff's disability status under 10 U.S.C. § 1201. Compl. ¶ 2; *see also Sawyer v. United States*, 930 F.2d 1577, 1580–81 (Fed. Cir. 1991) (holding that claims challenging disability status under 10 U.S.C. § 1201 may be adjudicated by the United States Court of Federal Claims). In addition, although Plaintiff "voluntarily waived judicial review of the informal PEB," he retained the right to seek administrative review of the informal PEB decision and judicial review of that administrative review. *See Meidl I*, 100 Fed. Cl. at 8. Therefore, the court had jurisdiction to adjudicate Plaintiff's claims.

In addition, in *Meidl I*, the court determined that the February 10, 2011 Complaint alleged that Plaintiff suffered an injury in fact that can be determined in a specific amount and is traceable to the Army's allegedly unlawful determination of disability retirement pay and benefits. Compl. ¶ 22; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180–81 (2000) ("[A] plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal citations omitted)). As such, Plaintiff has standing to challenge the ABCMR's decision.

B.   **Standard for Judgment on the Administrative Record.**

Review of a military correction board's decision is "limited to the administrative record before the deciding official or officials." *Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991). The standard for judgment on the administrative record, pursuant to RCFC 52.1, is whether the plaintiff has met the burden of proof to show that the decision was without a rational basis or not in accordance with the law, given all the disputed and undisputed facts in the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) (instructing the court to make "factual findings under RCFC 52.1 from the [limited] record evidence as if it were conducting a trial on the record"); *see also Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 355 (2009) ("In reviewing cross-motions for judgment on the administrative record, the court must determine 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" (citations omitted)).

The standard of review is limited to determining whether the agency decision is "arbitrary, capricious, not supported by substantial evidence, or contrary to applicable statutes and regulations." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998); *see also Hoskins v. United States*, 40 Fed. Cl. 259, 271–72 (1998) ("Once a plaintiff has sought relief from a correction board . . . the plaintiff is bound by that board's determination unless he can satisfy the difficult standard of proof that the correction board's decision was illegal because it

was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, or money is due.") (citations omitted). The court, however, may not retry the case on the merits. *See Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of the disputed matter.").

The plaintiff bears the burden of proving any deficiency by "cogent and clearly convincing evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986). Such proof must also "overcome the strong, but rebuttable, presumption that the administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Porter*, 163 F.3d at 1316 (quoting *Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979)).

### C. Whether The Army Board For Correction Of Military Records' Determination On Remand Is Arbitrary, Capricious, Not Supported By Substantial Evidence, Or Contrary To Law.

#### 1. The Plaintiff's Argument.

Plaintiff posits three arguments for why the ABCMR's remand decision is arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. First, the ABCMR failed to conduct a "meaningful analysis." Pl. Mot. JAR 7, 9. Specifically, the ABCMR's decision "selectively quote[s]" from OERs and lists evidence that contradicts its conclusion that Plaintiff's bilateral foot conditions were not unfitting. Pl. Mot. JAR 5. In that vein, the ABCMR also erred in concluding that there is "no evidence that would support overturning the approved PEB finding regarding his foot conditions" (Pl. Mot. JAR 9 (quoting Gov't SR II at 12)), because it ignored significant evidence to the contrary, including the MEB's evaluation, the Commander's determination that Plaintiff could not perform his MOS as an acquisition or logistics officer, and the fact that Plaintiff was unable to wear protective body armor. Pl. Mot. JAR 9. This contrary evidence "demonstrates that [Plaintiff's] foot condition was unfitting—at least in combination or collectively with his other unfitting conditions." Pl. Mot. JAR 9; *see also* Pl. Mot. JAR 7 (concluding that the ABCMR's decision is arbitrary and capricious, because "it lists evidence and findings supporting that [Plaintiff's] bilateral foot conditions are actually unfitting"). In sum, the ABCMR's remand decision failed to "reasonably construe" relevant evidence "about the impact of his foot conditions on his fitness." Pl. Reply 7.

Second, the ABCMR's reliance on the OERs is "erroneous," because the OERs do not address any of Plaintiff's specific physical disabilities and are "irrelevant to the question of which conditions are unfitting." Pl. Mot. JAR 8. The OERs simply state that Plaintiff is being medically discharged from the Army and cannot take the APFT, but do not relate that assessment to any of Plaintiff's specific physical impairments. Pl. Mot. JAR. 8. In fact, the OERs cite Plaintiff's performance rating as "outstanding performance, must promote." Pl. Reply 4 (citing Gov't SR II at 12 (OERs describing Plaintiff's "outstanding performance")). Accordingly, the ABCMR erred in relying on Plaintiff's "outstanding OERs as evidence that [Plaintiff's] foot conditions were not unfitting," because the OERs do not address any specific medical condition

directly.  Pl. Reply 4.  Nevertheless, on remand, the ABCMR used the positive comments in the 2008, 2009, and 2010 OERs to conclude that Plaintiff's bilateral foot conditions were *not unfitting*, but his shoulder and wrist conditions *were unfitting*.  Pl. Reply 4; Pl. Mot. JAR. 8.  This was illogical, arbitrary, and capricious.  Pl. Reply 4–5 ("Simply put, the OERs are not indicative of [Plaintiff's] fitness for any conditions and, therefore, cannot be the basis to differentiate between conditions being fitting or unfitting.").  Therefore, the ABCMR acted erroneously in relying on the OERs to find that Plaintiff's bilateral foot conditions were "not unfitting," and to simultaneously justify a finding of "unfitness" as to his shoulder and wrist impairments.

Third, the ABCMR failed to analyze the collective impact of all of Plaintiff's disabilities on his overall fitness, but instead focused on his bilateral foot conditions individually, in contravention of the court's January 25, 2013 Order and 10 U.S.C. § 1216a(b).[10]  Pl. Reply 3 ("Nowhere in the [ABCMR's] decision does it discuss, analyze, or even reference the impact of [Plaintiff's] bilateral foot conditions in concert with, collectively, or in combination with other conditions (including his shoulder and wrist conditions).").[11]  Instead, the ABCMR's remand decision "repackaged" what the PEB previously found, to appear as the holistic analysis that the court ordered.  Pl. Reply 1–4; *see also* Pl. Mot. JAR. 10–11 ("[T]he ABCMR never undertook, or stated, how or under what standards, it analyzed the issue [of Plaintiff's unfitness] under a 'collective' or 'combined' standard.").

In sum, contrary to the ABCMR's remand decision, under either the standards imposed by relevant Army Regulations, or in *Rieth v. United States*, 462 F.2d 530 (Ct. Cl. 1972), Plaintiff's bilateral foot conditions were "contributory or collectively unfitting."  Pl. Mot. JAR 11–12 (citing Army Reg. 635-40, ¶ 3-5d).[12]  Because the MEB determined that Plaintiff's foot

---

[10] Section 1216a(b) provides that disability ratings "shall take into account *all medical conditions, whether individually or collectively*, that render the member unfit to perform the duties of the member's office, grade, rank, or rating."  10 U.S.C. § 1216a(b) (emphasis added).

[11] Plaintiff also contends that on remand the ABCMR erred in analyzing this issue in terms of the "combined" effect of his conditions on overall fitness, and implies that the "combined" effect is distinct from the "collective" effect of conditions.  Pl. Mot. JAR 10.

[12] Army Regulation 635-40 provides:

> *There is no legal requirement in arriving at the rated degree of incapacity to rate a physical condition which is not in itself considered disqualifying for military service when a Soldier is found unfit because of another condition that is disqualifying*. Only the unfitting conditions or defects and those which contribute to unfitness will be considered in arriving at the rated degree of incapacity warranting retirement or separation for disability. Any non-ratable defects or conditions will be listed in item 8 of DA Form 199 (Physical Evaluation Board Proceedings), but will be annotated as non-ratable.

Army Reg. 635-40, ¶ 3.5d (emphasis added).

9

conditions were disqualifying and the ABCMR previously decided that Plaintiff's shoulder and wrist conditions were unfitting, the ABCMR was required to rate Plaintiff's bilateral foot conditions. Pl. Mot. JAR 11. In the alternative, Plaintiff's bilateral foot conditions were contributory or collectively unfitting conditions, even if they are not disabling in isolation. Pl. Mot. JAR 12. A disabling defect is "one which renders the member unfit to perform military duty," while a contributory defect is one that, although not disabling, is ratable under the Veterans Administration Schedule because it contributes to unfitness. Pl. Mot. JAR 12 (quoting *Rieth*, 462 F.2d at 535). Since the MEB findings and statements from Plaintiff's Commander demonstrate that Plaintiff had functional limitations "on his duty performance," Plaintiff's bilateral foot conditions contributed to his unfitness and the ABCMR was required to "address[] this issue directly." Pl. Mot. JAR 12; *see also* Pl. Reply 6–7 (Since "the Army MEB found [Plaintiff] medically disqualified based on his bilateral foot conditions . . . [those conditions were] certainly collectively and in combination with his other conditions unfitting.").[13]

### 2. The Government's Response.

The Government responds that, on remand, the ABCMR reasonably concluded that Plaintiff's foot conditions did not contribute to his unfitness, based on a thorough review of all relevant evidence, and appropriately affirmed the PEB's determination that Plaintiff's physical conditions warranted a twenty percent disability rating. Gov't Opp. & Cross-Mot. 6–7. Plaintiff "simply disagrees" with the ABCMR's decision, and "impermissibly invites the [c]ourt to substitute its judgment for that of the ABCMR." Gov't Opp. & Cross-Mot. 9 (citing *Taylor v. United States*, 106 Fed. Cl. 443, 451 (2012) (explaining that the United States Court of Federal Claims "should not substitute its judgment for that of [a board for correction of military records] when reasonable minds might differ on the conclusions to be drawn from the evidence")).

The ABCMR's remand decision is supported by substantial and relevant evidence, including Plaintiff's OERs and a November 2009 orthopedic consult. Gov't Opp. & Cross-Mot. 6–7. The 2008, 2009, and 2010 OERs recorded Plaintiff's "outstanding performance" and promotion potential as "best qualified." Gov't Opp. & Cross-Mot. 7–8. The November 2009 orthopedic consult, conducted as part of the MEB process, concluded that Plaintiff's left shoulder and left wrist pain did not meet retention standards. Gov't Opp. & Cross-Mot. 7. The same report, however, did not suggest that Plaintiff's foot conditions affected his fitness for duty. Gov't Opp. & Cross-Mot. 7. Contrary to Plaintiff's argument, the OERs are highly probative in determining fitness (or a lack thereof), since they detail precisely how well a service member performs and the impact of any medical conditions on that performance. Gov't Reply 4–5 (citing, *e.g.*, Army Reg. 623-3 (stating that OERs "focus on a Soldier's duty performance, or how well a Soldier performs his or her assigned tasks and meets the Army Values"); *see also*

---

[13] The court also directed the ABCMR on remand to consider "whether Plaintiff's sleep apnea became unfitting after the MEB and PEB proceedings, but before Plaintiff's separation from the Army." *Meidl II*, 108 Fed. Cl. at 578. That issue was considered on remand. Gov't SR II at 13. Plaintiff's Motion For Judgment On The Administrative Record does not challenge the ABCMR's remand decision regarding this issue. Accordingly, this issue is waived. *See United States v. Ford Motor Co.*, 463 F.3d 1267, 1276–77 (Fed. Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before th[e] court." (internal citation omitted)).

*Rebosky v. United States*, 60 Fed. Cl. 305, 311–13 (2004) (reviewing plaintiff's OERs to evaluate the lawfulness of the ABCMR's decision)). In fact, "no document in [Plaintiff's] file is more relevant to his fitness for duty than his OER." Gov't Reply 5. And, Plaintiff offered no rationale for why the ABCMR cannot rely on the same evidence to find certain distinct physical conditions fitting and unfitting. Gov't Opp. & Cross-Mot. 11

The Government recognizes that certain evidence is contrary to the ABCMR's decision, including the February 2010 MEB report and February 26, 2010 recommendation from Plaintiff's Commander that identified *pes planus* and *plantar fasciitis*, among others, as conditions affecting Plaintiff's fitness for duty. Gov't Opp. & Cross-Mot. 7–8. That evidence, however, was reviewed by the ABCMR and contradicted by the 2008, 2009, and 2010 OERs, as well as the PEB's determination that subsequently was approved by the USAPDA. Gov't Opp. & Cross-Mot. 8. In drawing a conclusion about the cumulative import of this evidence, the ABCMR reasonably concluded that, although Plaintiff "had a medical condition that did not meet retention standards, he was able to achieve an outstanding performance rating in his duty position, and, therefore, [his] foot conditions were not unfitting." Gov't Opp. & Cross-Mot. 11 (citing Gov't SR II at 12(1)(c)–(e)). That the MEB found Plaintiff's foot conditions to be disqualifying and failed retention standards is "beside the point." Gov't Opp. & Cross-Mot. 10. "Nothing in the MEB's analysis can substitute for the decision of the PEB, which has the sole purview of deciding fitness for duty." Gov't Reply 7; *see also id.* ("The MEB simply narrows the field of a service member's possible conditions to those that the PEB can consider as disqualifying[.]"); Gov't Opp. & Cross-Mot. 10 ("[A]lthough the MEB found that [Plaintiff's] foot conditions were disqualifying, its findings are not conclusive[.]"). Because the PEB reviewed the MEB findings, February 26, 2010 recommendation from Plaintiff's Commander, and provided a reasoned analysis as to why Plaintiff's foot conditions did not contribute to his unfitness, the ABCMR's decision is lawful. Gov't Reply 7; Gov't Opp. & Cross-Mot. 11.

Moreover, the ABCMR analyzed "the combined and collective impact of [Plaintiff's] foot conditions" on his overall fitness. Gov't Reply 3. Therefore, the ABCMR's remand decision is fully justified by pertinent statutory, regulatory, and Department of Defense Instructions. Gov't Opp. & Cross-Mot. 9 (citing Gov't SR II at 8–12). Because Plaintiff's OERs showed that he excelled in his duty position, despite having substantial bilateral foot impairments, both the PEB and the ABCMR "considered whether [Plaintiff's] foot conditions contributed to rendering him unfit and found that it did not." Gov't Opp. & Cross-Mot. 15; *see also* Gov't Reply 3 ("[T]he PEB found [Plaintiff's] foot conditions not to be unfitting . . . [and that was] central to the ABCMR's determination that the combined and collective effect of [Plaintiff's] foot conditions did not contribute to his unfitness[.]"); Department of Defense Instruction 1332.38(E3.P3.2) (defining unfitness as the inability, due to physical disability, to "reasonably perform the duties of [one's] office, grade, rank, or rating"); Army Reg. 635-40, ¶ 3-1 ("The mere presence[] of an impairment does not, of itself, justify a finding of unfitness because of physical disability."). Moreover, the ABCMR's review of the PEB findings is limited to determining whether "the complainant has demonstrated an error or injustice." Gov't Opp. & Cross-Mot. 14 (quoting *Taylor*, 106 Fed. Cl. at 456). The scope of review is not whether the ABCMR "could have reached a different result" than the PEB. Gov't Opp. & Cross-Mot. 12–13. Because the ABCMR's decision was reasonable in light of the totality of the evidence and issued after considering "all aspects of the fitness issue," the court has no basis to overturn that

decision. Gov't Opp. & Cross-Mot. 15 (citing *Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (2006) ("When substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." (internal citations omitted))).

Finally, Plaintiff's reliance on *Rieth* is not warranted. In that case, the plaintiff "was found to have an unfitting condition," whereas, in this case, neither the PEB nor the ABCMR found Plaintiff's foot condition unfitting. Gov't Opp. & Cross-Mot. 15 (citing *Rieth*, 462 F.2d at 535–37). Moreover, in *Rieth*, the Court of Claims determined that an increase in plaintiff's disability rating was proper, because his shoulder injury "contributed to weakness and temporary paralysis several years" after his discharge. Gov't Reply 6 (citing *Rieth*, 462 F.2d at 536–37). Therefore, *Rieth* is inapposite. The issue before the ABCMR on remand was to reexamine the PEB's determination of Plaintiff's fitness at the time of discharge, not the impact of any disabilities "several years down the road." Gov't Reply 6 (citing *Bosch v. United States*, 27 Fed. Cl. 250, 263 (1992), *aff'd*, 11 F.3d 1070 (Fed. Cir. 1993) (clarifying that the military's disability rating determinations are "directed to the sole question of whether the particular member . . . is unfit to perform the duties of his office")).

### 3. The Court's Resolution.

The United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims "will not disturb the decision of [a board for correction of military records] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). "It is equally settled that responsibility for determining who is fit or unfit to serve in the armed forces is not a judicial province[.]" *Heisig*, 719 F.2d at 1156. That the court "might disagree" with the decision of a board for correction of military records, in and of itself, is insufficient to overturn a correction board's decision. *See Storey v. United States*, 531 F.2d 985, 987 (Ct. Cl. 1976) (A decision of a "[c]orrection [b]oard is entitled to finality and may not be overturned, even if the court might disagree with it[.]"). The ABCMR, in turn, "decide[s] cases on the evidence of record," and "is not an investigative body." 32 C.F.R. § 581.3(c)(2)(iii). Thus, in reviewing the decision of a PEB, the ABCMR is limited to ascertaining whether the PEB committed a "material error or injustice" and only if "sufficient evidence exists on the record [will the ABCMR] direct or recommend changes in military records to correct the error or injustice." *Id.* § 581.3(b)(4)(ii).

Plaintiff's first argument must fail, because although "the ABCMR . . . reached a conclusion with which Plaintiff disagreed . . ., that disagreement does not establish that the ABCMR was arbitrary or capricious." *Meidl II*, 108 Fed. Cl. at 576. In this case, the ABCMR reviewed the relevant evidence, including Plaintiff's military records, OERs, November 2009 Orthopedic consult, February 28, 2010 MEB decision, and March 25, 2010 decision by the PEB. Gov't SR II at 1–7. Although Plaintiff characterizes the ABCMR's decision as flawed because it "lists evidence and findings supporting" a contrary conclusion (Pl. Mot. JAR 7), that contention represents a fundamental misapprehension: the ABCMR *must* review all relevant evidence, whether that evidence supports the ABCMR's determination or not. *See Jordan v. United States*, 205 Ct. Cl. 65, 84 (1974) (holding that the correction board's decision was arbitrary and capricious, in part, because it was "not based upon a complete and balanced consideration *of all*

*the relevant evidence available and presented*" (emphasis added)); *see also Heisig*, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." (emphasis in original)); *Chisolm v. United States*, 41 Fed. App'x. 394, 398–99 (Fed. Cir. 2002) (holding that a board for correction of military records must actually review "evidence [that] is in direct conflict with the evidence on which the [c]orrections [b]oard relied for its ultimate decision"). That is what the ABCMR did on remand, as evidenced by the explicit acknowledgment that the record presented different "account[s] of [Plaintiff's] ability to perform his duties." Gov't SR II at 12. The fact that Plaintiff, after reviewing this same record, would have reached a different conclusion than the ABCMR is immaterial. For these reasons, the court has determined that the ABCMR's decision was not an "unreasonabl[e] constru[ction]" of relevant evidence, and therefore is not arbitrary or capricious. *See Joslyn v. United States*, 110 Fed. Cl. 372, 392 (2013).

Plaintiff's challenge to the ABCMR's reliance on the 2008, 2009, and 2010 OERs has some merit. It is true that a correction board's reliance on OERs in making fitness determinations generally is justified. *See Rebosky*, 60 Fed. Cl. at 311–14 (relying extensively on plaintiff's OERs to conclude that "substantial evidence [supports] the ABCMR's conclusion to separate the plaintiff from service"); *see also Joslyn*, 110 Fed. Cl. at 392–93 (same re: fitness determination). In this case, however, while Plaintiff's OERs are overwhelmingly positive, they do not directly address which of Plaintiff's specific physical impairments, *i.e.,* his bilateral foot impairments, shoulder injury, or wrist injury, were or were not unfitting. As such, Plaintiff is correct that, had the ABCMR *merely* analyzed his OERs and drawn contradictory conclusions that his shoulder and wrist conditions were unfitting, but that his bilateral foot conditions were not, the ABCMR's decision would be implausible and, therefore, arbitrary and capricious. *Cf. Van Cleave v. United States*, 66 Fed. Cl. 133, 136 (2005) (explaining that where a "rational connection[] between the facts found and the choices made" is lacking, or the correction board's decision is "implausible," that decision is unlawful).

In this case, however, neither the PEB nor the ABCMR relied *solely* on Plaintiff's OERs to justify the fitness determinations as to his shoulder, wrist, and bilateral foot conditions. Instead, the PEB (and by implication the ABCMR) relied on, *inter alia*, Plaintiff's surgical history, difficulty lifting objects over five pounds, X-rays showing degenerative changes in the scapholunate joint, and functional loss limitations, as evidence that his shoulder and wrist conditions were unfitting. AR 19 (March 25, 2010 PEB decision). That same evidence, however, did not address Plaintiff's bilateral foot conditions. Therefore, the PEB (and the ABCMR by implication) relied on Plaintiff's November 2009 orthopedic consult, Plaintiff's passage of the APFT as late as April 2008, despite suffering from *pes planus* since "at least 2002," "minimal analgesic use on an occasional basis," *and* his "outstanding" OERs through 2009 as evidence that his bilateral foot conditions were not unfitting. AR 19. In other words, the ABCMR did not differentiate between Plaintiff's conditions exclusively on the basis of his OERs.

In light of evidence before the PEB and ABCMR showing Plaintiff's bilateral foot conditions were not unfitting, it was not "erroneous" for the ABCMR to reference the OERs as supporting evidence, since they were probative of the impact of Plaintiff's foot conditions on his

performance. *See* Army Reg. 623-105 ¶ 1-8 (explaining that OERs are part of the Officer Evaluation System, a system that evaluates potential for promotion based on an officer's "performance"); Army Reg. 623-3 (Performance evaluations analyze "how well a Soldier performs his or her assigned tasks."). The 2008, 2009, and 2010 OERs demonstrate that Plaintiff suffered from bilateral foot conditions while exhibiting "outstanding" (Gov't SR II at 12) or "superb" performance (AR 59), and thus it was not arbitrary or capricious for the ABCMR to rely, in part, on that information as evidence that Plaintiff's bilateral foot conditions were not unfitting. *See Rebosky*, 60 Fed. Cl. at 311–14 (reviewing OERs to evaluate lawfulness of ABCMR's decision); *see also Joslyn*, 110 Fed. Cl. at 392–93 (upholding correction board's fitness determination because plaintiff's OERs were evidence "that a reasonable mind might accept as adequate to support a conclusion" (internal quotation omitted)). Although the court might have found the OERs less probative than the ABCMR, that is not the court's role. For these reasons, the court has determined that the ABCMR's reliance on Plaintiff's OERs was not arbitrary or capricious; and, mindful that the "question is not whether substantial evidence weighs against the [ABCMR's] decision but whether substantial evidence supports it," *Joslyn*, 110 Fed. Cl. at 392, the court has determined that the ABCMR's decision was supported by substantial evidence.

Finally, the court's January 25, 2013 Order directed the ABCMR to "consider whether Plaintiff's foot conditions contributed to rendering him unfit." *Meidl II*, 108 Fed. Cl. at 578; *see also* 10 U.S.C. § 1216a(b) (providing that disability ratings "shall take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating"). Plaintiff has not shown by "cogent and clearly convincing evidence" that the ABCMR failed to comply with the court's Order, or with section 1216a(b). *See Wronke*, 787 F.2d at 1576. The court is satisfied that the ABCMR on remand reviewed the relevant regulatory and statutory requirements, all relevant evidence, and came to a reasonable conclusion that the PEB acted within its discretion and authority in concluding that Plaintiff's "foot conditions did not contribute to his unfitness" (Gov't SR II at 12). *See Volk v. United States*, 111 Fed. Cl. 313, 325 (2013) ("The arbitrary and capricious standard . . . is highly deferential and requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."). Although the court would have been inclined in this case to have decided matters differently, it "is not the role of the court to reweigh this evidence." *Id.* at 330; *see also Taylor*, 106 Fed. Cl. at 451 (The United States Court of Federal Claims "will not substitute its judgment for that of the [correction] board's when reasonable minds might differ[.]"). Plaintiff's remaining arguments amount to a request that the court decide the merits of Plaintiff's fitness for duty. As it must, the court declines to do so. *See Heisig*, 719 F.2d at 1156 ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province.").

### IV. CONCLUSION.

For the reasons stated herein, Plaintiff's July 10, 2013 Motion For Judgment On The Administrative Record is denied, and the Government's September 4, 2013 Cross-Motion For

Judgment On The Administrative Record is granted. The Clerk of Court is directed to enter judgment in favor of the Government.

**IT IS SO ORDERED**.

 /s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**
